**Jim & Carol DAILY, Appellants–
Petitioners,**

**v.**

**CITY OF COLUMBUS BOARD OF
ZONING APPEALS, Appellee–
Respondent.**

No. 03A05–0810–CV–591.

Court of Appeals of Indiana.

April 15, 2009.

Michael G. Naville, Stephen T. Naville, Lorch & Naville, LLC, New Albany, IN, Attorneys for Appellants.

Alan L. Whitted, Columbus, IN, Attorney for Appellee.

## OPINION[1]

KIRSCH, Judge.

Jim and Carol Daily ("the Dailys") appeal from the trial court's order affirming the City of Columbus Board of Zoning Appeals' ("the BZA") denial of the Dailys' temporary use application for a farmers' market on the 2.1–acre lot ("the 2.1–acre lot") in Columbus, Indiana that they are purchasing on contract, in their action seeking declaratory judgment. The following issue is dispositive of this appeal: whether the trial court and the BZA erred by finding that the 2.1–acre lot was illegally created in 1973.

We reverse and remand for proceedings consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

In April 1973, the co-administrators of the Estate of Strietelmeier conveyed a 5.0–acre lot located in Bartholomew County to BDW, Inc. ("BDW"). In October of 1973, BDW divided the 5.0–acre lot ("the 1973 split") conveying 2.9 acres ("the 2.9–acre lot") to Polley Building Supply, and in June of 1974, conveying the remaining 2.1–acre lot to Keith Roberts. In June of 1975, Roberts conveyed the 2.1–acre lot to Gene and Maxine Eddy. The Dailys are purchasing the 2.1–acre lot on contract from the current owners of the lot. On October 8, 2007, the Dailys filed for an application for a Zoning Compliance Certificate (ZCC–07–175–Oct.) with the Co-lumbus–Bartholomew Planning Department in order to obtain approval to use the 2.1–acre lot as a temporary farmers' market. The Dailys' application was reviewed and denied. The problems with their application were identified as: 1) the alleged unlawful creation of the 2.1–acre lot; and 2) the proposed use of an adjacent private right-of-way for the access to the property.

On October 24, 2007, the Dailys filed an appeal of the Planning Department staff decision. The BZA considered the appeal at its December 18, 2007 meeting, and affirmed the staff decision denying the Dailys' application on February 26, 2008. The Dailys then appealed the BZA's denial to the Bartholomew Circuit Court through a verified petition for writ of certiorari and complaint for declaratory relief. On September 8, 2008, the trial court entered findings of fact and conclusions thereon affirming the BZA's denial of the Dailys' application. The Dailys now appeal.

### DISCUSSION AND DECISION

Indiana Code section 4–21.5–5–14 provides that a trial court may provide relief from an administrative decision only if the agency action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. The burden of demonstrating the invalidity of the agency action is on the party asserting invalidity. Ind.Code § 4–21.5–5–14(a). In reviewing an administrative decision, a

---

1. We held oral argument in this case on March 31, 2009. We commend counsel for the quality of their written and oral advocacy.

court is not to try the facts de novo or substitute its own judgment for that of the agency. Ind.Code § 4–21.5–5–11. On appeal, to the extent the trial court's factual findings were based on a paper record, a reviewing court conducts its own de novo review of the record. *Equicor Dev., Inc. v. Westfield–Washington Twp. Plan Comm'n,* 758 N.E.2d 34, 37 (Ind.2001).

■ The construction of a zoning ordinance is a question of law. *Lucas Outdoor Adver., LLC v. City of Crawfordsville,* 840 N.E.2d 449, 452 (Ind.Ct.App. 2006). In construing the language of a zoning ordinance, this court follows the ordinary rules of statutory construction. *Id.* We will interpret the ordinance as a whole and give its words their plain, ordinary, and usual meaning. *Id.* The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the ordinary and plain meaning of the language used. *Id.* at 452–53.

■ The controversy here concerns the creation of the 2.1–acre lot in 1973 and the impact that creation has on its development and use under the current zoning requirements. The BZA contends that the 2.1–acre lot was created illegally when BDW split up the 5.0–acre lot. More specifically, the BZA claims that the deed was in violation of the Bartholomew County Subdivision Control Ordinance in existence at the time, and was required to be platted then. The Dailys argue that the BZA and the trial court erred by finding that the Bartholomew County Subdivision Ordinance in effect in 1973 required the platting of the 2.1–acre lot. The Dailys argue that the 1973 split did not result in a "subdivision" under the applicable zoning ordinance and that platting of the 2.1–acre lot was then and is now therefore unnecessary. However, both sides agree that the Bartholomew County Subdivision Ordinance applied to the 2.1–acre lot.

Subsection 8(a) of Bartholomew County Ordinance No. 1–3, 1958, as amended, reads as follows:

> The division of any parcel of land into two (2) or more parcels, sights or lots, any one of which is less than three (3) acres in area, for the purpose of transfer of ownership or building development; provided, that the division of [sic] partition of land into parcels conforming in all respects to the requirements of "Zoning Ordinance No. 1–1, 1958, of Bartholomew County, Indiana", not involving any new streets or easements of access, in said parcel being not less than three (3) acres in size, shall not be considered a subdivision.

*Appellants' App.* at 341.

The BZA claims that the proper interpretation of the Bartholomew County Subdivision Ordinance Subsection 8(a) is that "a division of any size parcel where there is the creation of new streets or easements of access or if the division creates a parcel less than three acres" is considered a subdivision that must be platted. *Appellee's Br.* at 10–11. The Dailys have also suggested an alternative interpretation of Subsection 8(a).

While Subsection 8(a), as drafted, is not a model of clarity, our task is to interpret the ordinance as a whole and give its words their plain, ordinary, and usual meaning. We find that the ordinance as a whole provides for a general rule for determining when the division of land constitutes a "subdivision," and an exception to that general rule. The general rule for determining when there has been a subdivision of land applies when there is "[t]he division of any parcel of land into two (2) or more parcels, sights or lots, any one of which is less than three (3) acres in area, for the purpose of transfer of ownership or building development." *Appellants' App.*

at 341. Here, at least initially, the 1973 split of the 5.0–acre lot into the 2.9–acre lot and the 2.1–acre lot appears to fit into the general rule finding that a subdivision occurred. However, the exception to the definition of "subdivision," applies where there is "the division of [sic] partition of land into parcels conforming in all respects to the requirements of 'Zoning Ordinance No. 1–1, 1958,' of Bartholomew County, Indiana, not involving any new streets or easements of access, in said parcel being not less than three (3) acres in size." *Id.* The 1973 split falls within the exception to the definition of "subdivision" if: 1) the newly created parcels conform to all other zoning requirements; and 2) the parcels' creation did not involve any new streets or easements of access. The reference to "said parcel being not less than three (3) acres in size" in the exception refers to the remaining parcels; the exceptions, i.e., 1) no new roads and 2) no zoning violations, must exist in all new plats or parcels that are less than three acres. *Id.* Both sides appear to agree that the 2.1–acre lot and the 2.9–acre lot conformed to all other zoning requirements at the time of the 1973 split. Second, their creation did not involve any new streets or easements of access. Consequently, we find that the BZA and the trial court erred by finding and concluding that the 1973 split resulted in the unlawful creation of the 2.1–acre lot, thus requiring it to be platted prior to its development by the Dailys as the split did not result in a subdivision.

We reverse and remand to the trial court for proceedings consistent with this opinion.

BAKER, C.J., and NAJAM, J., concur.